The first case is DivX v. United Patents, 2023-1699. Mr. Hendafar. Good morning, Your Honors. May I please the Court? I would like to start by an analogy, if I may. Imagine a claim that recites a car that is half red and half blue. Petitioners do not find a reference that divides the car into two colors, let alone the colors claimed, let alone dividing in the way the claim does. All they have is a car that is red in its entirety and a car that is blue in its entirety. And what they argue is that a person of ordinary skill would be motivated to combine the red car and the blue car to come up with a car that is half red and half blue, but their motivation is that blue is better than red. But those aren't our facts. Correct. So our facts are a claim that divides the playback period into two phases. It uses one stream selection for phase one and it uses a second stream selection method for phase two. Petitioners, again, do not have a reference that divides the playback period into the two phases that the claim does. They do not have a reference that uses two different stream selection methods during playback. All they have is one reference that uses one stream selection method for the entirety of playback and a second reference that uses a second stream selection method for the entirety of its playback. But the issue is obviousness, not anticipation. Correct. Their motivation as to why a posito would combine these two references derived by the claim is that the second method is better than the first method. Yeah, but I don't see Gigliotti as being that separate a method from what's shown in Bitterman. I mean, Gigliotti recognizes that there are lots of different ways to do it, particularly in paragraph 13 on page 1034, and it does certainly start the streaming without reference to the filling buffer. It starts the streaming without, I'm sorry? Without filling the buffer. That's respectfully not entirely accurate. If I may, please refer your honor to appendix page 1026. On 1024, it should start at first connection rate. That's before checking anything about the buffer. Correct. But there is no playback yet. If I may, please refer you to... Right, and it is a defined method as shown in figure three, which is what the board relied on, which is what the petition relied on, and this is what Gigliotti does. It fills a buffer to a first threshold. Then it starts playback. After it starts playback, it uses the bandwidth and the buffer to decide whether it's going to switch to a different stream. The issue is whether after Gigliotti starts the playback, which on figure two, which is what your honor pointed to, is step 218. The issue is whether after Gigliotti starts the playback, does it use one stream selection method or two different stream selection methods, and it has one stream selection method as shown by the algorithm. But I want to just step back for a moment. Before we move away from Gigliotti, when I look at figure three and then read the discussion at 1036-1037, it's my understanding that Gigliotti is not using its check the buffer fill level feature from the very, very beginning of playback in Gigliotti. Gigliotti has two buffers. There's an initial buffer and then there's a larger buffer. And the initial period, it's not thinking about the larger buffer. It's just using the initial buffer for maybe two to five seconds. And then from after that period, it starts playing back from the larger buffer. And it's only with the larger buffer is Gigliotti checking for possible buffer underfill. And then if it falls below some watermark, then will it switch to a different video stream with a lower bitrate. All that to say is it doesn't appear to me that Gigliotti itself is contemplating the sensitivity about buffer underfill from the very beginning of the playback. And so therefore, any combination of Gigliotti with Bitterman wouldn't actually be necessarily checking for buffer underfill from the very, very beginning. And I understand what I believe the issue may be that I need to address. The portions of the claimed invention we are discussing and the portions that are at dispute here are after the playback has already started. I agree with your honor that Gigliotti has an initial buffer before it starts playback. That it fills that initial buffer, then it starts playback, and at that point it considers the buffer. The claimed limitation we are looking at are both after the playback has already started. So the question is, after the playback has already started... I'm a little lost. The claim talks about a startup period, right? An initial startup period. So that's literally from the very beginning. It's not after playback has begun. So within that initial startup period, there is a playback and there is a switching of the stream. So if I may please refer you to appendix page 65, and that's the claim one in the patent. And column 15, line 5, is when the initial startup period starts. Within that initial startup period, you first select a stream, then you start playback, and then you switch that stream based on the bandwidth. All within that initial startup period. So the initial startup period includes switching the stream based on the bandwidth after the playback has already started. And that's on line 18 of column 15, playing back at least one chunk of the first alternative stream stored in the buffer. But the initial startup period includes the selection of the first stream, right? Storing that first video stream, or at least a chunk of it in the buffer, and then playing that back. And then switching the stream. That's 304, 306 of figure 3 of Gigliotti, right? Fair. And then the initial startup period, however, has more steps in the claims. It has an additional measurement and an additional switching of the streams based on the bandwidth during the initial startup period. I guess the point still remains, though, that even if you do a straight-up combination of Gigliotti with Bittermeat, that wouldn't necessarily require checking buffer underfill levels at the very beginning of the startup of the playback. Is that right? Well, that's not right, because Gigliotti says that you do. Gigliotti doesn't start thinking about that until step 314, which is after its initial period ends with the initial buffer, and then you're working on the larger buffer. Right, but in Gigliotti's initial buffer, you do not have a playback. So the playback in Gigliotti starts after the initial buffer is already filled, and that's clear on figure 2, where your owner will see step 204, that's appendix page 1026. I'm looking at step 306. Sure, step 306, sure. It says play at the first bit rate, right? Correct. So in step 306, you start the playback, and Gigliotti uses... So now we're playing the videos. Correct. Now, your owner is saying that after the playback, Gigliotti does not consider the buffer for a certain period of time? I'm saying your argument is this combination of these two references would necessarily lead to a result where you must be checking for buffer underfill from the very beginning of startup. All I'm saying is, petitioners say, we divide the claim intervention into two phases. We are only going to use Biderman for phase one, and we are only going to use Gigliotti for phase two. And what we are saying is, there is no motivation to use Gigliotti only for phase two of the claim. Petitioner's motivation is Gigliotti is better than Biderman. So if that's the case, you would use all of Gigliotti for all of the time duration. If we're already working off the premise that there's substantial evidence to support the board's finding, to add Gigliotti to Biderman's playback process, then the question is, well, what would be that obvious combination? And certainly, if you add Gigliotti to any point in the Biderman playback process, at least for that part of the process, it'll be an improvement. But why would you choose that specific point in Biderman to add Gigliotti? Because the point is, almost any point in the process would improve the resulting process from that point of the addition to the end of the playback. Right, but the luck is not that you can use the claim as a road map, add Gigliotti to Biderman just based on where the claim requires, and then say, because that's an improvement, there is motivation. The test is the opposite, not doing the claim. Would a posita have been motivated to add Gigliotti to Biderman at that random midpoint that petitioners do, not based on anything in the references, but based on the claim itself? So I understand your honor that you can add Gigliotti to any point in Biderman, and that may be an improvement, but the issue is, would a posita have known to add Gigliotti to that specific point in the middle of playback in Biderman? And that's the issue, there is no evidence in the record. And I would like to reiterate the board's finding, that's on appendix 40 and 41, all the board found was that a posita would have known Gigliotti's method is superior to Biderman, because it considers the buffer. That does not teach you to add Gigliotti at some random point in the middle of playback in Biderman. Even if in retrospect that may be an improvement, the issue is not knowing the claim, a posita wouldn't have known just based on Biderman and Gigliotti. Do you agree that Gigliotti doesn't check the buffer fill level from the very beginning of the Gigliotti process? The Gigliotti process, if your honor is pointing to before the playback starts, I actually don't think I agree with that, because it needs to check the fill level for it to make sure the buffer is filled. I guess my point is there's two buffers in Gigliotti. There's an initial buffer and there's a larger buffer. It initially starts playing back from the initial buffer. And then it's playing from the larger buffer. And then when it's playing from the larger buffer, it's checking for buffer underfill in the larger buffer. Correct. And it's not ever checking for buffer underfill in the initial buffer. Because it wasn't playing back when it only had the initial buffer. So the playback starts after the initial buffer is filled, so that's naturally where you check for the buffer underfill. But again, I want to point out, they're not relying on just Gigliotti and say Gigliotti's initial buffer is the first phase of the claim, they are saying we are going to bring Gigliotti in the middle of Bitterman's playback and we're just going to apply it here. And how do they come up with this point in Bitterman? Based on the claim. Not based on what Bitterman says to start switching the method here, not based on what Gigliotti says to combine us with Bitterman at this point. The point that they find in Bitterman to bring in Gigliotti is based on the claim. It's not based on an independent claim. Good morning, and may it please the court. Angela Oliver on behalf of Unified Patents. DIVX has not disputed that adding Gigliotti's buffer fill consideration technique to Bitterman's very similar system would have been beneficial and would have improved Bitterman's system. Those are undisputed factual findings that we believe are sufficient to affirm the board's motivation decision in this case. Specifically, the board found that this would be beneficial because without some method for measuring the fill level in Bitterman's buffer, which it already uses, Bitterman might switch streams without having enough content in the buffer to prevent underflow. And, of course, that results in interruptions to the user. The board made these findings in appendix pages 40 and 41. The board said this was a specific benefit with a rational underpinning for combining Bitterman and Gigliotti because this would avoid interruptions in streaming and thereby improve Bitterman's system. So it's our contention that adding Gigliotti to Bitterman's system is an improvement, including, as Yonor noted, at any stage of that process, it's going to be a beneficial improvement. So even if it's part of the way through, that's still a benefit because fewer interruptions to the user are always going to be better. Did you say that part in either your petition or your reply? The point about it would be beneficial to add a Gigliotti scheme to Bitterman at any point during the process of playback in Bitterman? Not expressly because we argued overall that this would be an overall benefit, adding this technique. But there's a timeline feature to this claim where during time one, one scheme happens. During time two, another scheme happens. And so then the question is, why would a skilled artist back in 2011 with Bitterman and Gigliotti create a combination that chops up the playback into two time zones? Sure. And we explained in our petition that this is based on a predetermined threshold being met in Gigliotti. We refer to that initial buffer as an example of that threshold. And that would be the point in time where it makes sense to start considering the buffer fill. Because prior to that, as Your Honor noted in Gigliotti's Figure 3, for example, before you start filling the buffer, there's not a buffer fill level to consider. So we did talk about that being a predetermined threshold. At that point is when you switch and you start considering the buffer fill level. Now, just to take a step back, I'm sorry, was there a question? Okay. Just to take a step back, we consistently argued through our briefing and here on appeal that this is simply not the relevant question for the obviousness analysis. There's no need to show why you would not also consider the buffer fill level during Phase 1. And that's simply not something required by the claims. It's not something required under this Court's case law. So, for example, obviousness does not require a party to address other potential changes that might have been made when implementing the combination. We've discussed the GE versus Raytheon for that principle. Obviousness also does not require showing the best combination, as long as it's a suitable combination. So even if considering the buffer fill level during the Phase 1 switch would have been better, would have been also beneficial, that's simply not something that needed to be shown here to establish obviousness based on the claim language and based on this Court's case law. And in particular, we'll also note just that this was addressed as a matter of motivation throughout the proceedings below. But again, it's our position that this was not relevant to the obviousness analysis because there was no requirement in the claims or in the obviousness case law to establish this separate point about why buffer fill level should not be considered. The Board said at Appendix Page 41 that what they're really asking is for a negative motivation to show why you would not do this beneficial method during the first period. And the last thing I'll note, Your Honor, is with respect to how the 987 patent describes this initial startup period, which of course is how we read the claims, there is a discussion, a brief discussion of the initial startup period in the specification, which does consider the buffer fill level during that process. That's in Column 13, Line 36, if that's useful for the Court. Line 36 through 41. Again, it's our position that the specific benefit that the Board found in this case of adding Jigliotti's buffer fill level consideration to the technique in Biderman would have been specifically beneficial, and that is sufficient to affirm obviousness here. Is this patent in any litigation? Not at this time. I don't know particularly the strategic cause of why. At this point in time, this case is also quite old. This was filed many, many years ago. But the patent is not currently in litigation. And I'll say there are only two claims at issue here, Claims 1 and 10. There are many dependent claims that were not challenged. Many of those claims address what the more detailed aspects of the patent discusses, regarding the upper-bound seek delay and the lower-bound seek delay. For example, those are in Claims 3 and 5. But those concepts are just not at issue in this proceeding. The patent isn't about to expire. I don't believe so. Anything further? Not for me, Your Honor. I appreciate that very much. So Your Honor asked my friend on the other side, did Unified explain a motivation as to why they would bring Gigliotti at this random point in Biderman's playback? And is there a motivation for that? And counsel said not expressly. Let me read for you what Petitioner argued before the Board. Their motivation is that That's not a motivation to bring in Gigliotti at some random point in Biderman's playback, absent the claim's teaching. That's a teaching for Gigliotti being a wholesome substitute for Biderman, exactly what Gigliotti itself does. So there is no evidence in the record for the Board to find that we are bringing in Gigliotti, but not for the entirety of the claim, just for this portion of the claim. The only reason they do that is to use the claim as a roadmap. Now, I also want to highlight the significance of using the two different string selection methods on switching between them in the patent. The embodiment that's relevant here is the embodiment of Figure 5, which starts on column 12, line 47, appendix page 63. And the patent explains that during an initial startup period, it uses one string selection method, starts the playback, then it uses that same string selection method at the initial stage of playback. And then at some point later, it switches the string selection method to a different method. So two different string selection methods. And that's also shown in the prosecution of the patent, where the applicant explained to the examiner the significance of using the two string selection methods. So the issue here is, why would a prosita, absent the claim, would have brought in Gigliotti, not to use Gigliotti as it itself does, not to use Biderman as it itself does, but no, the prosita would know without a claim to use two different string selection methods for the two different playback periods. How would a prosita have known to bring in Gigliotti? You keep saying prosita. To speak English in court, I think you're talking about a person of ordinary skill. Yes. I apologize. How would that person of ordinary skill in the art, not knowing the claim, have known to take Gigliotti, not use Gigliotti's own algorithm, but bring it in Biderman, not for the entirety of the playback, but from random points in the middle of the playback, just based on what the claim says. There is no teaching in the record. There is no motivation argued by petitioner. And the board's motivation that the board found did not provide a motivation for some middle point in playback. It would be a motivation for throughout the playback. And with that, if there are any questions, I'd be happy to answer.